IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**HERBERT ADKINS,**

       **Plaintiff,**

v.                                   Case No.: 3:20-cv-00281

**ANDREW M. SAUL,**
**Commissioner of the**
**Social Security Administration,**

       **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Motion for Summary Judgment and Defendant's brief requesting judgment in his favor. (ECF Nos. 14, 15, 16).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF No. 14); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF

1

No. 16); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, **with prejudice,** and removed from the docket of the Court.

I.   **Procedural History**

On October 3, 2017, Plaintiff Herbert Adkins ("Claimant") filed an application for DIB, alleging a disability onset date of October 30, 2016 due to depression, anxiety, and hypertension. (Tr. at 175-76, 194). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 12). Claimant subsequently filed a request for an administrative hearing, which was held on March 6, 2019 before the Honorable Melissa Hammock, Administrative Law Judge (the "ALJ"). (Tr. at 31-50). On April 11, 2019, the ALJ issued a written decision, finding that Claimant was not disabled as defined in the Social Security Act. (Tr. at 9-30). The ALJ's decision became the final decision of the Commissioner on February 27, 2020 when the Appeals Council denied Claimant's request for review. (Tr. at 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 12, 13). Thereafter, Claimant filed a Motion for Summary Judgment and Brief in Support of Motion for Summary Judgment, (ECF Nos. 14, 15), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 16), to which Claimant filed a reply, (ECF No. 17). Consequently, the matter is fully briefed and ready for resolution.

II.  **Claimant's Background**

Claimant was 57 years old on his alleged disability onset date and 59 years old on the date of the ALJ's decision. (Tr. at 24). He completed the twelfth grade and previously

2

worked as an insurance sales agent. (Tr. at 47, 195). His primary language is English. (Tr. at 193).

### III.   Summary of the ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the

3

performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to

4

do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for disability insurance benefits through December 31, 2021. (Tr. at 14, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since October 30, 2016, his alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: depressive disorder with anxious distress and panic and alcohol abuse with unspecified alcohol induced disorder. (Tr. at 15, Finding No. 3). The ALJ also considered Claimant's hypertension, gastroesophageal reflux disease, status-post ankle sprain, mild cannabis use in sustained remission, and obesity, but the ALJ concluded that the impairments were non-severe. (Tr. at 15).

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 15-18, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional imitations: he can perform simple, routine tasks at a non-production rate pace and make simple work related decisions in a work environment with no more than occasional changes. He can have occasional interaction with supervisors and coworkers, and he can have no interaction with the public.

(Tr. at 18-24, Finding No. 5). At the fourth step, the ALJ found that Claimant was unable to perform any of his past relevant work. (Tr. at 24, Finding No. 6).

Under the fifth and final inquiry, the ALJ reviewed Claimant's past work experience, age, and education in combination with his RFC to determine his ability to engage in substantial gainful activity. (Tr. at 24-25, Finding Nos. 7-10). The ALJ considered that (1) Claimant was defined as an individual of advanced age on his disability onset date; (2) he had a high school education and could communicate in English; and (3) transferability of job skills was not material to the disability determination. (Tr. at 24, Finding Nos. 7-9). Given these factors and Claimant's RFC, with the assistance of a vocational expert, the ALJ concluded that Claimant could perform jobs that existed in significant numbers in the national economy, including work as a linen room attendant, day worker, and laundry worker. (Tr. at 24-25, Finding No. 10). Therefore, the ALJ found that Claimant was not disabled as defined in the Social Security Act and was not entitled to benefits. (Tr. at 25, Finding No. 11).

### IV. Claimant's Challenge to the Commissioner's Decision

Claimant's sole challenge to the Commissioner's decision is that the ALJ did not define the RFC limitation that he could work at a "non-production rate pace." (ECF No. 15 at 4-8). Claimant argues that the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") held in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) that when a claimant has a moderate impairment in concentration, persistence, or pace the ALJ must not only explain the type of tasks that the claimant can perform (e.g. unskilled work), but the ALJ must also explain the pace at which the claimant can perform the tasks. (*Id*. at 4). Claimant further contends that the Fourth Circuit clearly established in *Perry v. Berryhill*, 765 F. App'x 869 (4th Cir. 2019) and *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), *as amended* (Feb. 22, 2019), that an ALJ must define the meaning of the "non-production rate pace" limitation that the ALJ assessed in this case. (*Id* at 4-8.).

In response to Claimant's challenge, the Commissioner argues that, rather than applying a categorical rule that the decision is incapable of meaningful review, the Court should review the evidence that bolstered the RFC finding to determine if the decision is supported by substantial evidence. (ECF No. 16 at 1-2).

Claimant filed a reply to the Commissioner's response, arguing that this matter is fundamentally no different than *Thomas* and *Perry*, which have already been decided by the Fourth Circuit. (ECF No. 17 at 1). Therefore, Claimant maintains that there is every reason to believe that, if faced with an appeal, the Fourth Circuit would rule the same in this case as it did in *Thomas* and *Perry*. (*Id*.).

### V. Relevant Medical History

The undersigned has reviewed all of the evidence before the Court. The evidence that is most relevant to the instant matter is summarized as follows.

### A. *Treatment Records*

On April 21, 2016, Claimant's family care physician, Melin J. Moses, M.D., prescribed Wellbutrin for Claimant's anxiety. (Tr. at 262). One year later, on September 17, 2017, Claimant underwent a psychiatric evaluation at St. Mary's Medical Center for depression and recent suicidal thoughts. (Tr. at 268). He was referred for outpatient treatment at Prestera Center. (Tr. at 314). During his intake evaluation at Prestera Center on September 28, 2017, Claimant reported depression and anxiety, and he stated that he could not work because he could not concentrate and his mind was constantly "going in 50 different directions." (Tr. at 314, 315). Psychiatrist Sheeba Rahman, M.D., evaluated Claimant on November 16, 2017. She recorded that Claimant's concentration was intact. (Tr. at 434). Dr. Rahman prescribed Seroquel for mood stabilization, paranoid thoughts, auditory hallucinations, and insomnia, and she recommended outpatient psychotherapy. (Tr. at 436).

During Claimant's follow-up appointment with Dr. Rahman on December 11, 2017, Claimant exhibited fair concentration. (Tr. at 429). He reported that Seroquel was making him groggy. (Tr. at 428). Thus, Dr. Rahman reduced Claimant's dosage of Seroquel and added Zoloft to his medication regimen. (Tr. at 431). Claimant began seeing another psychiatrist at Prestera Center, Afiah Ahsan, M.D., on February 5, 2018. (Tr. at 423). His concentration during the examination was good. (Tr. at 424). On May 14, 2018, Claimant told Dr. Ahsan that he presented to the Emergency Department a week earlier after suffering a panic attack. (Tr. at 417). However, other than his reported anxiety, Claimant's mental status was normal, including focused concentration/attention. (Tr. at 418). Dr. Ahsan concluded a few months later on August 13, 2018 that Claimant was clinically stable on medications. (Tr. at 415). Claimant's attention/concentration remained focused

8

during that visit and during his subsequent appointments on November 12, 2018 and February 4, 2019. (Tr. at 399, 406, 412).

### B. Evaluation and Opinion Evidence

On November 17, 2017, state agency psychologist Jim Capage, Ph.D., performed a psychiatric review technique based on his review of Claimant's medical records. He found that Claimant had moderate restriction in maintaining concentration, persistence, or pace. (Tr. at 57). Dr. Capage also assessed Claimant's mental RFC, concluding that Claimant was moderately limited in maintaining attention and concentration for extended periods. (Tr. at 60). He determined that Claimant was limited to a low stress work setting, which he defined as no fast-paced production demands, no more than occasional minor changes in work routines, and no supervisory responsibilities. (Tr. at 61). Timothy Saar, Ph.D., affirmed Dr. Capage's assessment on January 11, 2018. (Tr. at 69, 72, 73).

On June 11, 2018, Dr. Ahsan completed a mental RFC statement after treating Claimant on two occasions six months apart. (Tr. at 335). Dr. Ahsan assessed, *inter alia*, that Claimant could not maintain attention and concentration or perform at a consistent pace without an unreasonable number and length of rest periods for 15 percent or more of the workday. (Tr. at 335, 336).

### C. Claimant's Testimony

Claimant testified during his administrative hearing on March 6, 2019 that he lived alone in an apartment, and he supported himself by using savings, food stamps, and financial assistance from his sister. (Tr. at 36-37). He recounted that he previously worked as a welder until the steel industry declined, and he then worked as an insurance agent for 25 to 30 years. (Tr. at 38). Claimant stated that near the end of employment he started

9

experiencing anxiety, depression, and a lot of personal stress in his life, which affected his job performance. (Tr. at 39). Claimant stated that he could not keep his mind together or keep up with the sales quotas, and he lost his job. (*Id.*).

## VI. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII. Discussion

Claimant argues that the ALJ's RFC finding is unsupported by substantial evidence because the ALJ failed to define the limitation that Claimant could perform simple, routine tasks "at a non-production rate pace." (ECF No. 15 at 4). Social Security Ruling

("SSR") 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the most that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.*

According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The functions that the ALJ should assess include the claimant's physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" mental abilities; and other abilities, "such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 CFR § 404.1545(b-d). As the regulations explain, a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [the claimant's] ability to do past work and other work." 20 C.F.R. § 404.1545(c).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is

11

capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4.

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7. As the Fourth Circuit recently emphasized, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311 (citations omitted). Critically, the "second component, the ALJ's logical explanation, is just as important as the other two." *Id.* Indeed, Fourth Circuit "precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Id.*

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

In *Mascio*, the ALJ concluded that the claimant experienced moderate difficulties in maintaining concentration, persistence, or pace; however, the ALJ failed to include any

12

mental RFC restrictions in the controlling hypothetical question presented to the vocational expert. 780 F.3d at 637-38. While the vocational expert supplied a list of jobs that were unskilled, the Fourth Circuit found this to be insufficient to account for the claimant's moderate mental limitations and held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit indicated that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the ALJ failed to either include any mental restriction in the RFC or explain why a "moderate limitation in concentration, persistence, or pace at step three d[id] not translate into a limitation" in the ALJ's RFC finding, the Fourth Circuit found that remand was appropriate. *Id.*

Many cases emerged from the *Mascio* decision, including the Fourth Circuit's ruling in *Thomas*. The Fourth Circuit held in *Thomas* that the ALJ's RFC finding, which stated that the claimant could not perform work "requiring a production rate or demand pace," did not provide adequate information for the Court to understand what the ALJ meant by the terms. *Thomas*, 916 F.3d at 312. The Fourth Circuit noted that "production rate or demand pace" were not commonly-understood vocational terms and without further explanation the Court could not determine whether the RFC finding properly accounted for the claimant's moderate limitations in concentration, persistence, or pace. *Id.* at n.5. Therefore, the Fourth Circuit remanded the case for the ALJ to establish for how long and under what conditions the claimant could focus her attention on work activities and stay on task at a sustained rate. *Id.*

Building on the reasoning expressed in *Thomas*, the Fourth Circuit considered in *Perry* an ALJ's finding that a claimant could perform only unskilled work in a "non-production oriented work setting." *Perry*, 765 F. App'x at 872. The Fourth Circuit noted that, while "unskilled work" was a term of art defined in the regulations, there was no regulatory definition for "non-production oriented work setting" or for any other similar term. *Id*. The Fourth Circuit also explained that, just like the RFC limitation in *Thomas*, the term "non-production oriented work setting" was not commonly understood. *Id*. The Fourth Circuit distinguished its prior holding in *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017). *Id*. It noted that the RFC finding in *Sizemore*, which restricted the claimant to "non-production jobs," included additional context that allowed for meaningful review of the limitations, including the descriptors that the claimant could perform work only in a "low stress" setting without any "fast-paced work" or "public contact" to account for moderate limitations in concentration, persistence, or pace. *Id*. (citing *Sizemore*, 878 F.3d at 79). However, because the ALJ in *Perry* offered no explanation for what she meant when she used the phrase "non-production oriented work setting," the Fourth Circuit stated that it could not meaningfully assess whether there was a logical bridge between the evidence in the record and the ALJ's RFC finding. *Id*. (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) and *Mascio*, 780 F.3d at 637). Thus, just like in *Thomas*, the Fourth Circuit remanded the decision in *Perry* for the ALJ to provide a "clearer window into her reasoning." *Id*. at 873 (citing *Thomas*, 916 F.3d at 312-13).

Numerous district courts in the Fourth Circuit have remanded cases for further clarification based on the rulings in *Thomas* and *Perry*. For instance, the United States District Court for the District of Maryland recently remanded a decision because the ALJ

included in the RFC finding a limitation that the claimant could perform "no work at a fixed production pace." *RE: Timothy M. v. Saul*, No. DLB-19-2234, 2020 WL 7074632, at *1 (D. Md. Dec. 3, 2020). The Court determined that the term used by the ALJ was directly analogous to the terms in *Thomas* and *Perry*, both in form and defect. *Id.* at *2. Furthermore, it rejected the Commissioner's argument that the fact that the ALJ thoroughly discussed the claimant's impairments and limitations cured the error. *Id.* The Court explained that the issue was the clarity of the ALJ's decision and the lack of insight into the ALJ's reasoning. *Id.* Other district courts have reached similar conclusions in evaluating undefined pace limitations. *See Virginia F. v. Saul*, No. 4:19-CV-00026, 2020 WL 6737876, at *5 (W.D. Va. Nov. 13, 2020) (remanding for failure to explain RFC limitation that the claimant could not work at a "fixed production rate pace") (citing *Richard W. v. Saul*, No. DLB-19-2316, 2020 WL 4042853, at *2 (D. Md. July 17, 2020) (remanding where the ALJ limited the claimant to "performing work that does not involve a production-rate pace" but failed to explain "production-rate pace," preventing the court from conducting substantial evidence review); *Travis X.C. v. Saul*, No. GJH-18-1210, 2019 WL 4597897, at *5 (D. Md. Sept. 20, 2019) (remanding where the ALJ failed to adequately explain the meaning of "production rate pace" in the RFC determination, even where the ALJ summarized the doctor's testimony that the claimant "would not be able to tolerate … a fast-paced work environment such as an assembly line")); *see also Xavier S. v. Saul*, No. 1:19CV1195 (JFA), 2020 WL 1015816, at *25 (E.D. Va. Mar. 2, 2020) (remanding for failure to explain production-related limitation, and stating that limitations regarding interaction with others; changes in work setting; or use of judgment, decision-making, or simple tasks do not explain the production-related limitation); *Kane v. Saul*, No. 3:18-CV-746-HEH, 2020 WL 130134, at *4 (E.D. Va. Jan. 10, 2020)

(remanding for failure to define the RFC limitation that the claimant could work in a "non-production oriented setting" even though the ALJ specified that the claimant could perform unskilled work with a specific vocational preparation and certain specified interaction with others).

Undoubtedly, if an ALJ properly explains a pace limitation, the Court can review the decision for substantial evidence. For instance, the United States District Court for the Northern District of West Virginia recently held that an RFC limitation stating that the claimant could not perform "fast-paced production requirements" did not offend *Thomas* and *Perry*. *Summerfield v. Saul*, No. 5:19-CV-162, 2020 WL 2105850, at \*8 (N.D.W. Va. Apr. 16, 2020), *report and recommendation adopted,* 2020 WL 2104245 (N.D.W. Va. May 1, 2020). The Court concluded that the Fourth Circuit's rulings in *Thomas* and *Perry* were distinguishable because in *Summerfield* the ALJ elaborated on the RFC limitation, both in the decision and during the administrative hearing, stating that the claimant could perform instructions and tasks that could be learned in one month or less and carry out detailed but uninvolved written or oral instructions, but the claimant could not work in an assembly line or be subject to fast-paced production requirements. *Id.*; *see also Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at \*2 (D. Md. June 17, 2019) (declining to remand where ALJ defined "production rate pace" in the RFC with sufficient clarity, limiting the claimant to "no work requiring a high-quota production rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)"); *Nelson v. Saul*, No. 4:18-CV-163-D, 2019 WL 4748028, at \*5 (E.D.N.C. Aug. 29, 2019), *report and recommendation adopted*, 2019 WL 4747048 (E.D.N.C. Sept. 27, 2019) ("The present case is distinguishable from *Perry* and *Thomas* because here, the ALJ offered an explanation for

16

what he meant by "no production-rate or paced-rate work"—the ALJ wrote in a parenthetical, "such as would be done on an assembly line.")

In this case, the ALJ found that Claimant had moderate restriction in concentration, persistence, or pace. (Tr. at 16). In the RFC finding, the ALJ explained that, based on the clinical findings of anxious mood, early concentration and memory deficits, and Claimant's testimony that quotas were part of the reason that his past work was so stressful, the ALJ concluded that Claimant could only work at a non-production rate pace in a work environment with occasional changes. (Tr. at 20). However, like many of the cases cited above, the ALJ did not define what she meant by "non-production rate pace." The ALJ noted that the state agency psychologists concluded that Claimant could work in a low stress environment, defined as no fast-paced production demands, but she ultimately did "not defer or give any specific evidentiary weight" to any of medical opinions. (Tr. at 21). Therefore, it is unclear if the low stress limitation or definition was part of the "non-production rate pace" limitation assessed by the ALJ.

Furthermore, the ALJ did not define or explain the pace limitation in the hypothetical posed to the vocational expert. (Tr. at 48). Therefore, it is not apparent from the record whether the expert interpreted the "non-production rate pace" limitation in the manner that the ALJ intended it, or whether the list of unskilled jobs that the expert supplied properly accounted for the pace limitation that the ALJ intended. While the ALJ's RFC finding may very well be supported by substantial evidence in this case, the Court cannot make that determination without clarification from the ALJ. *Perry* and *Thomas* make clear that a term such as "non-production rate pace" does not have a common definition, nor is it defined in the regulations or case law. Thus, the ALJ must specify the meaning of the term for the Court to meaningfully review the decision and

determine if the limitation adequately accounts for Claimant's moderate limitation in concentration, persistence, or pace. For those reasons, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reconsider or elaborate on the "non-production rate pace" limitation in Claimant's RFC.

### VIII. Recommendations for Disposition

For the above reasons, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's motion to the extent that it requests remand of the Commissioner's decision, (ECF No. 14); **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 16); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of

18

Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** January 8, 2021

_____
Cheryl A. Eifert
United States Magistrate Judge