IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

Herbert Adkins,

            Plaintiff,

v.                                  CIVIL ACTION NO. 3:20-00281

Kilolo Kijakazi,
Acting Commissioner of the
Social Security Administration,

            Defendant.

**MEMORANDUM OPINION AND ORDER**

    This action was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge has submitted her Proposed Findings and Recommendations ("PF&R") and recommended granting Plaintiff's motion to the extent that it requests remand of the Commissioner's decision (ECF No. 14), denying Defendant's request to affirm the decision of the Commissioner (ECF No. 16), and dismissing the action from the docket of the court. On January 14, 2021, the Commissioner filed an Objection to Magistrate Judge Eifert's Proposed Findings and Recommendations. ECF No. 19. For the reasoning provided herein, the Court **GRANTS** the Objection (ECF No. 19) and **AFFIRMS** the Defendant's Request to Affirm the Commissioner's Decision (ECF No. 16).

**I. BACKGROUND**

    As noted in the PF&R, on October 3, 2017, Plaintiff Herbert Adkins ("Claimant") filed an application for disability insurance benefits, alleging disability because of his anxiety, depression,

and hypertension existing since October 30, 2016. PF&R at 2. After the Social Security Administration ("SSA") denied his request initially and upon reconsideration, Claimant filed a request for an administrative hearing which was held on March 6, 2019, before the Honorable Melissa Hammock, Administrative Law Judge ("ALJ"). *Id*. The ALJ found that Claimant was not disabled as defined within the Social Security Act. *Id*. The Appeals Council subsequently denied Claimant's Request for Review, making the ALJ's decision the final decision of Defendant Commissioner. *Id*.

A disability under the SSA is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration uses a five-step sequential inquiry to determine eligibility for social security disability benefits. If a claimant is found "not disabled" at one step, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520.

The Fourth Circuit has summarized the five-step process as follows: the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work. *See Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). "If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity, which is "the most" the claimant "can still do

despite" physical and mental limitations that affect her ability to work." *Id.* at 635 (citing 20 C.F.R. § 416.945(a)(1)).

If the claimant can perform his or her past work, the ALJ can find the claimant is not disabled. *Id.* If the claimant is not able to perform his or her past work, the ALJ proceeds to step five, where "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Id.* (citing 20 C.F.R. §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429).

Here, the ALJ found that Claimant possessed:

> [T]he residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine tasks at a non-production rate pace and make simple work related decisions in a work environment with no more than occasional changes. He can have occasional interaction with supervisors and coworkers, and he can have no interaction with the public.

PF&R at 6 (quoting Tr. at 15-18, Finding No. 5). After applying the RFC and using additional findings as to the Claimant's work experience, age, and with the assistance of a vocational expert ("VE"), the ALJ concluded that Claimant was not disabled within the meaning of the SSA and not entitled to benefits. *Id.*

Claimant challenged the Commissioner's decision on the basis that the ALJ did not define the RFC limitation that he could work at a "non-production rate pace." *Id*. at 7. He argued that the Fourth Circuit's caselaw establishes that an ALJ must define the meaning of the "non-production rate pace" limitation assessed in this case. *Id*. The Commissioner argues that the Court should not apply a categorical rule that the decision is incapable of meaningful review, but that it should review the evidence underlying the RFC finding to determine whether the decision was supported

by substantial evidence. *Id*. Plaintiff's response argued that the Fourth Circuit would require the ALJ to define "nonproduction pace rate." *Id*.

After extensive review, the Magistrate Judge, in her PF&R, concluded that the Court could not determine whether the ALJ's RFC finding was supported by substantial evidence without clarification from the ALJ. *Id*. at 17. She noted that the ALJ "must specify the meaning of the term [non-production pace rate] for the Court to meaningfully review the decision and determine if the limitation adequately accounts for Claimant's moderate limitation in concentration, persistence, or pace." *Id*.

Defendant objected to the PF&R because, she contends, the ALJ adequately defined nonproduction rate pace.  ECF No. 19 at 1. Defendant alleged that Magistrate Judge Eifert "fail[ed] to consider the ALJ's statement about offered medical opinions in the context of new applicable medical evidence regulations." *Id*. at 3. The ALJ heard medical opinions from the state agency expert psychologists regarding Plaintiff's ability to concentrate and performance. *Id*. at 2-3. Defendant essentially argues that these opinions informed the ALJ's decisions and that, when taken in conjunction with her findings, created a definition of "non-production rate pace" that is capable of meaningful review. *Id*. Defendant says that the Court should reject Plaintiff's request for a categorical rule that remand is required when a non-production rate pace is in an RFC because it is too vague. *Id*. Instead, the ALJ's decision formulated an RFC limiting Plaintiff to a "nonproduction rate pace" which was further defined as one which did not require production quotas. Plaintiff's response noted that the Magistrate Judge's PF&R was "well-reasoned and well supported by the caselaw" and so overturning the decision would be inappropriate. ECF No. 20 at 1.

## II. STANDARD OF REVIEW

This Court must "make a *de novo* determination of those portions of the . . . [magistrate judge's] proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). In doing so, the Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The Court, however, is not required to review the factual or legal conclusions of the Magistrate Judge to which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III. DISCUSSION

A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week, despite any medical impairments. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). For a court to meaningfully review an ALJ's RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The ALJ "must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphases and alteration in original) (internal quotation marks omitted). Otherwise, the ALJ's decision is incapable of meaningful review. *See Perry v. Berryhill*, 765 Fed App'x 869, 872 (4th Cir. 2019) (internal citations and quotations omitted)).

Specifically, regarding defining production rate paces, in *Thomas*, the Fourth Circuit held that the ALJ's RFC finding that claimant could not perform work "requiring a production rate or demand pace" did not provide adequate information for the Court to meaningfully review the ALJ's decision without further explanation or definition of that phrase. *Thomas v. Berryhill*, 916

F.3d 307, 312 (4th Cir. 2019) (noting that neither "production rate" nor "demand pace" are commonly used terms or enough for the court to know what they mean without elaboration."). The Fourth Circuit remanded the case for the ALJ to establish for how long and under what conditions the claimant could focus her attention on work activities and stay on task at a sustained rate. *Id*. at n.5. Similarly, in *Perry*, the Fourth Circuit found that using the phrase "non-production oriented work setting" in limiting a claimant's RFC was not adequate when it "made it "difficult, if not impossible" to evaluate whether restricting Claimant to such a setting properly accounted for his limitations in concentration, persistence, and pace. *Perry v. Berryhill*, 765 Fed. App'x 869, 872 (4th Cir. 2019).

However, mere use of the term "production-rate" or "pace requirements" do not warrant remand of an ALJ's decision. In *Sizemore*, for example, the Fourth Circuit found it was able to meaningfully review RFC limitations on a claimant to "work only in a low stress setting defined as non-production jobs without any fast-paced work and with no public contact." *Sizemore v. Berryhill*, 878 F.3d 72, 79 (4th Cir. 2017). *See also Crawford v. Saul*, No. 5:20-CV-00372, 2021 WL 2212729, at *12 (S.D. W. Va. April 21, 2021) (finding sufficient for review an RFC limitation "simple, routine, repetitive work that is not an assembly line or production rate pace."), *adopted by* 2021 WL 2212239 (S.D. W. Va. June 1, 2021*); Teresa B. v. Commissioner*, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (finding sufficient for review an ALJ's RFC limitation of " work requiring a high-quota production-rate pace (i.e. assembly line work where co-workers are side-by-side and the work of one affects the work of another.)"; *Dunston v. Berryhill,* No. 5:17-CV-380-FL, 2018 WL 4576783, at *1 (E.D.N.C. June 5, 2018) (finding no error when the Claimant had a moderate limitation in concentrating, persisting, and maintaining pace and the RFC limited the claimant to simple, routine, repetitive tasks; occasional interaction with coworkers; no

interaction with the public; and no performance of tasks that require a production pace), *adopted by* 2018 WL 4204639 (E.D.N.C. Sept. 4, 2018); *Simmons v. Berryhill,* No. 5:17-CV-4-D, 2018 WL 577243, at *7 (E.D.N.C. Jan. 10, 2018) (holding that an RFC limiting the claimant to "no quotas or fast-paced production work with uninvolved oral and written instructions in two-hour segments" adequately accounted for moderate limitations in concentrating, persisting, and maintaining pace), *adopted by* 2018 WL 576845 (E.D.N.C. Jan. 26, 2018).

"Rather, the issue is whether the ALJ provides sufficient information as to how the RFC accommodates the claimant's limitations, and whether the ALJ provides information for the court to determine what the restrictions in the RFC mean." *Roman T. v. Saul*, No. 7:19-CV-159, 2020 WL 4233104 , at *5 (W.D. Va. July 23, 2020), *adopted by* 2020 WL 4227561 (W.D. Va., July 23, 2020). Here, the ALJ limited Claimant to "simple, routine tasks at a non-production rate pace and mak[ing] simple work-related decisions in a work environment with no more than occasional changes." ECF No. 13 at 18. Further, he could only "have occasional interaction with supervisors and coworkers, and he can have no interaction with the public." *Id*.

Unlike the cursory analysis of Plaintiff's mental limitations in *Thomas*, the ALJ provided ample discussion of how Claimant's mental impairments impacted his ability to perform work-related tasks. The ALJ found that claimant could "perform simple, routine tasks and make simple work related decisions" which was "generally consistent with claimant's longitudinally normal cognitive presentation during mental status examinations, aside from his deficits in short-term and remote memory that occurred prior to the establishment of regular mental health care." *Id*. at 18, 20. She noted that, generally, Claimant's treatment records indicated "normal memory, concentration, and attention, aside from a single finding… in late 2017, while the claimant's medications were still being adjusted." *Id*. at 20.

The ALJ also noted that she found the testimony of state agency psychologists who concluded that Claimant "could understand, remember, and carry out at least two-to-three step instructions and make at least simple routine related decisions," to be very persuasive.[1] *Id*. at 21-22. The ALJ quoted the state psychologist's testimony that claimant could work in a "low stress environment, defined as no fast-paced production demands, no more than occasional minor changes in work routines, and no supervisory responsibilities." *Id*. at 21. She noted that "claimant's anxiety and his testimony that quotas were part of his reason his past work was so stressful factored into the residual functional capacity finding." *Id.* at 23. In fact, the ALJ specifically reasoned that "the clinical findings of his anxious mood, his early concentration and memory deficits, and his testimony that quotas were part of the reason his past work was so stressful, [she] further found the claimant could only work at a non-production rate pace in a work environment with occasional changes." *Id*. at 20.

It is also true that, standing alone, courts have found that a restriction on interactions with the public or coworkers may not account for concentration, pace, or persistence limitations but instead speaks to workplace adaptation. *See Hobbs v. Saul*, No. 9:18-3114, 2020 WL 847491, at *4 (D.S.C. Jan. 6, 2020) (finding that an ALJ's limitation to "no more than occasional interaction with the general public" did not account for a limitation in concentration, persistence or pace), *adopted by* 2020 WL 832892 (D.S.C. Feb. 19, 2020). *Knight v. Commissioner*, No. 15-1512, 2016 WL 11423546, at *6 (D.S.C. May 10, 2016), *adopted by* 2016 WL 4926072 (D.S.C. Sept. 16, 2016) (finding that the ALJ's limiting the hypothetical to "unskilled work with no direct interaction with the public; only occasional team type interaction with coworkers; [who] should not be required to adapt to greater than simple, gradual changes in the workplace" did not account for the

---

[1] Pursuant to the new regulatory framework, instead of assigning weight to medical opinions, the ALJ now considers the persuasiveness of a medical opinion. 20 C.F.R. 404.1520(c) (2017).

Plaintiff's moderate limitation in concentration, persistence, or pace). However, in both her findings in the RFC and the hypothetical to the VE, the ALJ did not solely mention Claimant's ability to interact with others, but also mentioned the nature of the workplace itself. ECF No. 13 at 18.

Further, the ALJ's hypothetical to the VE suggest that her understanding of non-production pace rate included limiting Claimant to simple routine tasks and to making "simple work-related decisions in a work environment with no more than occasional changes." *Id*. at 48. Magistrate Judge Eifert's findings noted that the ALJ did not define or explain the pace limitation in the hypothetical posed to the vocational expert, making it unclear if the expert interpreted it in the way the ALJ intended. PF&R at 17. However, there is no categorical rule that an ALJ is always required to include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC. *See Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). In *Shinaberry*, the Court noted that "'[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. *See id*. (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). "Hypothetical questions can also adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.'" *See id*. (quoting *Wischel* 631 F.3d at 1157.) Instead, the inquiry is "case-by-case." *Biestek v. Berryhill*, 139 S. Ct. 114, 1157 (2019).

Here, when posing her hypothetical to the VE, the ALJ told the VE was to assume this individual "can perform simple routine tasks at a non-production rate pace [and] *[c]an make simple work-related decisions in a work environment with no more than occasional changes*; have

occasional interaction with supervisors and coworkers, and have no interaction with the public." ECF No. 13 at 48 (emphasis added). This part of her definition was taken verbatim from one of the state psychological consultants, Dr. Capage's definition of a "low stress work environment" thus makes it clear that the low stress limitation or definition was part of the "non-production rate pace" limitation assessed by the ALJ. *See id*. at 21.

The VE, who has extensive experience in vocational rehabilitation and counselling and heard Plaintiff's testimony seemed able to understand the terms in the hypothetical questions and her additional statements did more to define what was meant by non-production pace rate. *Id*. at 48-49. *See Ross v. Berryhill*, No. 1:17CV1445, 2019 WL 955158 at *7 (M.D.N.C. Feb. 27, 2019) (finding adequate explanation for an RFC limitation when "the VE expressed no difficulty understanding the meaning of low production work environment in the ALJ's hypothetical, and [p]laintiff's representative, despite an opportunity for cross-examination, declined to question the VE on this issue." (internal citations omitted), *adopted by* 2019 WL 1430129 (M.D.N.C. Mar. 29, 2019). *See also Nelson v. Saul*, 2021 WL 1603812, at *12 (S.D. W. Va. Apr. 7. 2021) (noting that the ALJ need only refer to Claimant's credibly established limitations resulting from her impairments in the hypotheticals to the vocational expert by restricting her as provided in the controlling RFC."), *adopted by* 2021 WL 1601747 (S.D. W. Va. Apr. 23, 2021).

Considering the ALJ's explanation and analysis, the ALJ's limitation to simple, routine, tasks in a job without quotas and supervisory capacity or other nonproduction rate pace is appropriate. *See Richardson v. Berryhill*, 2019 WL 1354042, at *3 (W.D.N.C. March 26, 2019) ("[I]n light of the ALJ's full decision and analysis, the ALJ's RFC limitation to a nonproduction pace passes Thomas muster because the ALJ contextualized and explained how he reached his conclusion regarding Plaintiff's RFC"). The description provided a "logical bridge" and is

sufficient for the Court to meaningfully review the RFC, unlike in *Perry* and *Thomas*, the Court is not left to guess the RFC's meaning. Accordingly, because the ALJ's decision is not sorely lacking in a manner that frustrates the Court's ability to conduct a meaningful review, the Court finds remand inappropriate.

### IV. CONCLUSION

For the foregoing reasons, the Court **ACCEPTS** Defendant's objections as specified (ECF No. 19) and **REJECTS** the Magistrate Judge's Findings and Recommendation (ECF No. 18). Therefore, Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**. The Court finds that there was substantial evidence for the decision and enters judgment in favor of the Commissioner and **AFFIRMS** his decision as requested (ECF No. 16). The Court **DIRECTS** the Clerk to forward copies of this written opinion and order to Magistrate Judge Eifert, all counsel of record, and any unrepresented parties.

ENTER: September 21, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE